IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WASATCH PEDICAB CO., LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SALT LAKE CITY CORPORATION, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br><br>Case No. 2:07-CV-546 TS |

I. INTRODUCTION

Plaintiff Wasatch Pedicab Company (Wasatch) contends Salt Lake City Corporation (the City) imposed unreasonable insurance requirements as a condition of operating its pedicab business under a Revocable Permit, that it was impossible to maintain such unreasonable levels of insurance, and that the insurance requirement was calculated to, and did, force it out of business. Pursuant to 42 U.S.C. § 1983, Wasatch brings claims for violation of its rights to due process, equal protection, and free speech under the U.S. Constitution. Wasatch also brings a claim for negligence under state law.

Defendants, the City and several of its current and past officials and employees, move to dismiss Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

1

The Court finds that Wasatch fails to state a claim under § 1983 and declines to exercise supplemental jurisdiction over the negligence claim.

## II.  12(b)(6) STANDARD

Defendants move to dismiss on the following bases: Wasatch fails to state a claim for any constitutional violation; the individual defendants have qualified immunity; Wasatch fails to state a claim against the City because there is no allegation of a policy that violates any constitutional right; and immunity under the Governmental Immunity Act.  Defendants also contend that the Court should decline to exercise supplemental jurisdiction over the state law negligence claim.

Motions under Rule 12(b)(6) are governed by the plausibility standard recently announced by the Supreme Court in the *Twombly*[1] case.

> Rule 12(b)(6) provides for dismissal of a plaintiff's claims for "failure to state a claim upon which relief can be granted. . . ."  We accept as true all well-pleaded factual allegations and view them in the light most favorable to . . . , the nonmoving party.  "We may uphold the grant of a motion to dismiss if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'"  As we have explained this new standard for reviewing a motion to dismiss, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[2]

---

[1] *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007).

[2] *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007) (quoting *Macarthur v. San Juan County*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1968-69 (2007)) and *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

### III.  FACTUAL ALLEGATIONS

The following facts are alleged in the Second Amended Complaint (Complaint) and are accepted as true only for the purposes of considering this Motion.  The City does not have an ordinance governing the licensure of pedicabs.  On February 11, 2005, Wasatch obtained a Revocable Permit and License Agreement (Revocable Permit) with the City authorizing its pedicab business to operate upon condition of obtaining $2 million worth of insurance coverage.  The Revocable Permit allowed the City to revoke the permit "for any reason" with 30 days notice to Wasatch.  The Revocable Permit was renewed twice, extending the permit up through December 2006, when Wasatch let it lapse.

Defendants are as follows: the City; Anderson, the City's Mayor at the time of the events at issue; Guevara, the then-Mayor's Chief of Staff;  Dobbins, an employee in the City's Department of Economic Development; Spendlove and Reif, attorneys for the City; Rodriguez, Risk Manager for the City; and John and Jane Does, unknown persons who are alleged to have contributed to the City's decisions regarding the pedicab business.

Defendant Spendlove initially told Wasatch that it would need to carry $1 million of insurance to obtain the Revocable Permit, but subsequently informed Wasatch of the $2 million insurance requirement before the Revocable Permit was issued.  This $2 million insurance requirement remained constant while Wasatch was in business.

On January 9, 2006, the City informed Wasatch by letter that the insurance requirement would be raised to $3 million in three weeks.  But the insurance requirement was not actually raised during the life of Wasatch's Revocable Permit.

During the time it held the Revocable Permit, Wasatch attempted and failed to have the City change the insurance requirements for its Revocable Permit. Wasatch claims that the Defendant City officials would not listen to its position on why more affordable insurance requirements would be sufficient. Insurance requirements for horse carriages and for taxicabs, each regulated by a its own ordinance, were substantially lower than the insurance required for Wasatch's pedicab business.

During the time Wasatch was in business, the City attempted to draft an ordinance for pedicabs, but such an ordinance was not enacted. Wasatch was told by Spendlove[3] that an ordinance for pedicabs would be passed if Wasatch proved its usefulness. A non-defendant city employee[4] and the Mayor[5] told Wasatch that an ordinance would be proposed that would require less insurance.

Wasatch objected to the following terms of the proposed, but not passed, ordinance: licensure requirements for pedicab operators[6] that were greater than those imposed on

---

[3]Complaint, at ¶ 21.

[4]*Id*. at ¶ 36 (alleging City's Small Business Manager assured Wasatch that ordinance with lower insurance requirements would be passed within six months) and ¶ 42 (alleging same individual assured Wasatch that ordinance with "more reasonable (lower) insurance requirements would be proposed to the City Counsel and likely to [be] passed by the City Counsel within six months").

[5]*Id*. at ¶ 37 (alleging the Mayor "promised" Wasatch an ordinance with substantially lower insurance requirements would be passed by the time Wasatch was required to renew its Revocable Permit).

[6]The proposed ordinance would have required the following for pedicab operators: five year employment history, fingerprinting, police station photos, and extensive criminal background checks.

4

operators of horse carriages; the statement in the Purpose and Intent section;[7] and the insurance requirements.

The City was operating under the inaccurate assumption that pedicabs are more dangerous than horse carriages. However, the rate of incidents causing injury and/or property damages is lower for pedicabs than for horse carriages and taxis.

Wasatch's business plan required a large part of its revenue to come from advertising space on LCD televisions mounted on the pedicabs. Wasatch believed that a City ordinance regulating the pedicab business was essential to show potential advertisers that Wasatch could have a long-term presence. Wasatch purchased the LCD televisions for the pedicabs in August 2005 and displayed an advertisement for an out-of-state business. Wasatch was unable to offer extended advertising contracts because it was unable to guarantee it would remain in business.

## IV.  DUE PROCESS CLAIM

Defendants contend that Wasatch fails to allege a property interest sufficient to support a substantive or procedural due process claim based upon deprivation of property. Defendants contend that the passage of an ordinance is a discretionary function that cannot support Wasatch's claim of entitlement to either the ordinance or to the benefits (lower insurance and business stability) that it hoped would flow from enactment of an ordinance.

---

[7]Wasatch specifically objected to the proposed ordinance's statement: "The City Council expressly finds that pedicabs pose special dangers to the public health, safety and welfare of residents in the City of Salt Lake City." Complaint, at ¶ 38.

Wasatch contends its due process claim is not based upon the City's failure to pass an ordinance. Instead, Wasatch contends it has stated a claim for deprivation of its alleged property interest in its investment capital and "in the reasonable expectation—created by false assurance of City officials—that it would be able to operate with reasonable and affordable insurance requirements."[8]

In *Teigen v. Renfrow*,[9] the Tenth Circuit has explained the requirements of a claim under the due process clause as follows:

> The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." Thus, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable . . . property interest with which the state has interfered." In the context of a procedural due process claim, it is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process.
>
> * * *
>
> While the underlying interest is generally created by state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."[10]

---

[8] Pl.'s Mem. at 10 (citing Complaint at ¶¶ 58 ("Wasatch has a property interest in the implied contract created by its reasonable reliance on the City's representations") and 59 ("Wasatch also has a property interest in its invested capital, which the City's insurance requirements caused it to lose.")).

[9] 511 F.3d 1070 (10th Cir. 2007) (holding employees had protected property interest under Colorado law in their continued employment).

[10] *Id*. at 1078-79 (quoting U.S. Const. amend. XIV, § 1; *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006); and *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (additional citations, footnote and quotations omitted)).

Of the alleged facts relied upon by Wasatch to support its claim based upon an implied contract, all but one involve alleged assurances or promises regarding passing an ordinance or the probable terms of a promised ordinance.[11] The factual allegation that does not involve passing an ordinance merely alleges that Spendlove initially told Wasatch that the insurance rates would be lower.[12] However, Wasatch also alleges that approximately three months *before* Wasatch chose to obtain the Revocable Permit, Spendlove informed Wasatch of the correct amount of the required insurance rates, the same amounts that remained in place throughout the license period.[13] Thus, Wasatch does not allege that any City official promised Wasatch lower insurance rates other than as contained in a hoped-for ordinance.

Defendants contend the Complaint fails to state a claim for a property interest based upon an express or implied-in-fact contract. In support of their position, Defendants rely on two cases, *Heideman v. Washington City*,[14] and *Rapp v. Salt Lake City*.[15] As explained in *Rapp*:

> An express or implied-in-fact contract results when "there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms

---

[11] Complaint ¶¶ 37 (alleging Mayor promised an ordinance with substantially lower insurance rates); 42 (alleging assurance that ordinance requiring lower insurance rates would be proposed and likely passed); and 44 (same).

[12] *Id.* at ¶ 12.

[13] *Id.* at ¶ 16 (alleging correct rates were given in November 2004).

[14] 155 P.3d 900, 2007 UT App. 11 (2007).

[15] 527 P.2d 651 (Utah 1974).

7

or terms which reasonably may be made certain." We conclude there was no contract between the parties in this matter because there is no evidence that the necessary elements of a contract were present. There was no offer to enter into a contract, no acceptance from anyone qualified to enter into contracts for the City, and no communication that would indicate any type of meeting of the minds.

There is also no evidence that the City voted on a contract with Plaintiffs or had one signed by the city recorder as required by Utah Code sections 10-3-506 and 10-6-138.[16]

Relying on *Felder v. Casey*,[17] Wasatch contends that the cases cited by Defendants are not applicable because, under the Supremacy Clause of the U.S. Constitution, a state cannot place conditions on the vindication of a federal right under § 1983.[18]

The Court finds that *Felder* is not applicable. *Felder* involved a § 1983 claim brought in state court and dismissed by the state trial court for failure to comply with that state's notice-of-claim statute. The U.S. Supreme Court reversed, holding that the state's procedural notice-of-claim statute was preempted with respect to the federal civil rights claim "when the § 1983 action is brought in a state court" because the notice-of-claim statute was (1) inconsistent with the purposes of the federal right; and (2) would "result in different outcomes in §1983 litigation based solely on whether the claim was asserted in state or federal court."[19]

---

[16]*Heideman*, 155 P.3d at 908 (quoting *Rapp*, 527 P.2d at 654) (other citations omitted).

[17]487 U.S. 131, 133 (1988).

[18]Pl.'s Mem. at 12.

[19]487 U.S. at 138.

This action is not brought in the state court. Nor is there any issue in this case involving non-compliance with the type of notice-of-claim statute involved in *Felder*.[20] Instead, this Motion involves the very different issue of whether there is a "constitutionally cognizable . . . property interest,"[21] meaning cognizable under the U.S. Constitution. As discussed in *Teigen*, the first step in that determination is establishing the existence of an underlying property interest, "generally created by state law." "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as . . . an implied or express contract.'"[22] Only when an underlying property interest is established does the Court then look to "federal constitutional law [to] determine[] whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."[23]

Thus, before the Court could determine whether Wasatch's claimed property interests are cognizable under § 1983, Wasatch must first establish the existence of its claimed property interest under state law. Utah case law such as *Heideman* and *Rupp* are relevant to the issue of the existence of the claimed property interest.

---

[20]Although Wasatch contends that Utah's notice-of-claim requirement is inapplicable to this § 1983 case, Wasatch did comply with that and all other pre-suit requirements of the Utah Governmental Immunity Act. Complaint, at ¶ 8.

[21]*Teigen*, 511 F.3d at 1078.

[22]*Id*. at 1079 (quoting *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991)).

[23]*Id.*

The Court finds that the present case is similar to *Heideman*[24] in that Wasatch's Complaint does not establish that "the necessary elements of a contract were present."[25] As in *Heideman*, the allegations in this case fail to allege there was "acceptance from anyone qualified to enter into contracts for the City, and . . . communication that would indicate any type of meeting of the minds."  Similarly, as in *Heideman*, there is no allegation that "the City voted on a contract with Plaintiffs or had one signed by the city recorder as required by Utah Code sections 10-3-506 and 10-6-138."[26]  Thus, Wasatch's factual allegations do not establish the elements of an implied contract with the City under Utah state law.

Defendants also contend that Wasatch's allegations establish merely a unilateral expectation of passage of an ordinance requiring lower insurance rates—an expectation does not rise to the level of a property interest.  Wasatch contends that *Hyde Park*,[27] relied upon by Defendants for the proposition that there must be more than a mere unilateral expectation by a plaintiff to constitute a property right, is limited to land use cases.  The Court finds that the principle is not so restricted.  For example, in *E.SPIRE*

---

[24]In *Heideman* and in *Rapp*, the issue was considered under the summary judgment standard.  In the present case, as noted above, the Court considers the issue under the 12(b)(6) standard, considering all well-pleaded factual allegations as true and in the light most favorable to Wasatch.

[25]*Heideman*, 155 P.3d at 908.

[26]*Id.* (quoting *Rapp*, 527 P.2d at 654) (other citations omitted).

[27]*Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

*Communications, Inc. v. New Mexico Public Regulation Commission*,[28] the Tenth Circuit examined a company's claim that it was deprived of due process by the Public Service Commission's determination that a rate was interim, not permanent:

> "Property," as it relates to the Due Process Clause, is a "legitimate claim of entitlement" to some benefit. A unilateral expectation that the rate stated in the [agreement] was permanent does not constitute a protectable property right. *See Hyde Park*, 226 F.3d at 1210 ("An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'"). [Plaintiff] did not establish a protectable property interest and therefore cannot survive rational basis review.[29]

The Court finds that Wasatch's factual allegations simply do not establish a claim that Defendants deprived it of its operating capital. Wasatch submits no case law supporting its position that the City deprived it of its property (operating capital) by refusing to lower the Revocable Permit's insurance requirements to what Wasatch could afford.

Under Wasatch's theory, anytime a City official assured a business that the City would attempt to pass an ordinance containing economic terms favorable to such business, the business would have a protected property interest arising from the promised ordinance. However, the City's decision on whether to enact an ordinance, like its decision to issue a Revokable Permit on certain terms, is a discretionary function that does not give rise to a protectible property interest. Considering Wasatch's non-conclusory allegations as true, it fails to allege more than a unilateral expectation that the Revocable Permit's conditions would be altered or an ordinance enacted to provide lower insurance rates.

---

[28] 392 F.3d 1204, 1210 (10th Cir. 2004).

[29] *Id*. (quoting *Roth*, 408 U.S. at 577).

11

Wasatch having failed to allege a property interest, the due process claims must be dismissed.

## V.  EQUAL PROTECTION CLAIM

Defendants contend that the equal protection claim must be dismissed because Wasatch fails to allege facts sufficient to overcome the presumption of rationality that applies to government action.  Wasatch contends that there is no rational basis to classify pedicabs differently than similarly situated transportation companies such as taxis and horse-drawn carriages.

> Because Plaintiffs do not claim they are members of a suspect class or that the challenged classification burdens a fundamental right, this court applies rational basis scrutiny. Under this standard, this court will uphold a government classification if it is "rationally related to a legitimate government purpose or end."  An equal protection claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  In the context of a motion to dismiss under 12(b)(6), this court accepts all of the allegations in the complaint as true and then considers these "facts" according to the deferential rational basis standard. "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications."
>
> * * *
>
> [I]n applying rational basis scrutiny, "we are not bound by the parties' arguments as to what legitimate state interests the [classification] seeks to further.  In fact, this Court is *obligated* to seek out other conceivable reasons for validating [a state policy]."  Thus, this court must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court.  This determination is a legal question which need not be based on any evidence or empirical data.[30]

---

[30]*Teigen*, 511 F.3d at 1083-84 (quoting *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031-32 (10th Cir. 2007); *Powers v.*

The Equal Protection Clause "embodies a general rule that States must treat like cases alike, but may treat unlike cases accordingly."[31] The Court finds that a pedicab pedaled by a human is not a "like case" to that of a taxi powered by an internal combustion engine or a carriage pulled by a horse. The Court finds that pedicabs are not similarly situated to horse carriages and taxicabs. It is true that each may be operated by a transportation company. However, that does not change the fact that they are situated differently in fundamental respects. For example, taxicabs are designed to travel on freeways and all other types of streets in a city—making regulations for taxicab routes, equipment, operation, and fares inapplicable to the situations involving either pedicabs or horse carriages. Likewise, a horse carriage—involving a human driver, a horse, and a separate four wheeled carriage—and a pedicab—involving a human pedaling a "three-wheeled vehicle of uni-body construction (no trailers)"[32]—are not similarly situated. Such inherent differences are the reason why there are different City ordinances regulating taxicabs and horse carriages. It is also why there needed to be a separate ordinance proposed for pedicabs. Two or more transportation companies offering or seeking to offer pedicab service would be similarly situated for equal protection analysis of pedicab regulation by the City; companies operating exclusively taxicabs, horse carriages, or pedicabs are not similarly situated.

---

*Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004) *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005)) (emphasis in original).

[31]*Id.* at 1083 (quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997)).

[32]Complaint, at ¶ 9.

The cases cited by Wasatch are not to the contrary. *Williams v. Vermont*[33] involved a regulation treating currently similarly situated persons—Vermont residents who registered their vehicles in Vermont—differently on the basis of their residence at the time of their initial purchase of the vehicles.[34]

In *Village of Willowbrook v. Olech*,[35] the Court found that the allegations that the defendant Village intentionally demanded a 33-foot easement as a condition of connecting the plaintiff's property to the municipal water supply where the Village required only a 15-foot easement from other property owners seeking access to the water supply, "the Village's demand was 'irrational and wholly arbitrary'" and "the Village ultimately connected [plaintiff's] property after receiving a clearly adequate 15-foot easement" were "sufficient to state a claim for relief under traditional equal protection analysis."[36]  Because these allegations were sufficient, the Court did not also rely on allegations involving "the Village's subjective motivation."[37]  Instead, the Court recognized that a "successful equal protection claim" may be "brought by a 'class of one,' where the plaintiff alleges that she has been

---

[33] 472 U.S. 14 (1985).

[34] *Id.* at 23-24 (holding that where the Vermont registrants were presently similarly situated, treating them differently on the basis of their "residence at the time of purchase" of the vehicles was "a wholly arbitrary basis on which to distinguish among present Vermont registrants").

[35] 528 U.S. 562 (2000).

[36] *Id.* at 564-65.

[37] *Id.*

14

intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[38]

In *Rinaldi v. Yeager*,[39] the U.S. Supreme Court invalidated a New Jersey law based upon a discriminatory classification of similarly situated persons—all unsuccessful pro se appellants in criminal cases. The New Jersey law required only some (those who served actual jail time) of this similarly situated class to repay the cost of a government provided transcript, but did not require the same reimbursement from others (those who received only suspended sentences, probation, or a fine).[40]

Thus, *Williams*, *Olech*, and *Rinaldi* all involved plaintiffs who were determined to be similarly situated to others from whom they were being treated differently. In contrast, in the present case Wasatch is the only company in the City offering or attempting to offer pedicab service and therefore is not similarly situated to others for the purpose of considering the rational basis for the Revocable Permit's conditions for operating a pedicab business.

Another case relied on by Wasatch, *City of Cleburne, Texas v. Cleburne Living Center*,[41] involved a determination that requiring a special use permit for a group home for the mentally retarded but not for other multiple person dwellings in an area zoned for apartments, boarding houses, dormitories, nursing homes, and the like, did not have a

---

[38] *Id.* at 564.

[39] 384 U.S. 305, 308 (1966).

[40] *Id.* at 307-08.

[41] 473 U.S. 432 (1985).

rational basis and, instead, rested on "an irrational prejudice against the mentally retarded."[42]  As many courts have recognized, *Cleburne* was based upon unique facts.[43] The Court finds *Cleburne* is not helpful to this case where, as discussed below, there are rational bases for the City to treat permits for a pedicab business different from its regulation of taxicabs and horse carriages.  *Cleburne* does not, as suggested by Wasatch, require that the City substantiate the rational basis it proffers just because that basis is based upon the City's "beliefs" regarding pedicabs.[44]  As noted above, the Court's independent duty to consider "any conceivable rational basis for the classification," including those proffered by the City, "is a legal question which need not be based on any evidence or empirical data."[45]

Further, even if a pedicab business, a taxicab business, and a horse carriage business were similarly situated, the City's actions enjoy the presumption of rationality. Wasatch argues that it has overcome the presumption of rationality by showing that the City's insurance requirements were not based upon any rational basis belief that additional insurance would be required.  It also argues that additional discovery is needed before the Court can determine if the City's actions pass the rational basis test.

---

[42] *Id*. at 450.

[43] *See, e.g., Powers*, 379 F.3d at 1223-24 (noting that *Cleburne* involved unique perceived inequities).

[44] *Id*. at 1224 (holding "*Cleburne*-style rational-basis review has never been applied to economic issues").

[45] *Teigen*, 511 F.3d at 1083-84.

As noted in *Teigen*, this Court is "*obligated* to seek out other conceivable reasons for validating" the City's policy, regardless of whether "the reason ultimately relied on is provided by the parties." The Court finds the obvious, inherent, and practical differences between taxicabs, horse carriages, and pedicabs as modes of transportation provide a rational basis for the City's Revocable Permit's conditions. The inherent differences in possible methods of transportation on the city's street, *i.e.,* pedestrians, private automobiles, taxicabs, commercial tractor trailers, bicycles, skateboards, buses, and TRAX, result in their being subject to different rules. A pedicab is powered by a human being operating the pedicab in the midst of city traffic—an unfamiliar sight in the City. Because of this, surrounding traffic may slow, be distracted, or bunch up as a result of the natural caution or curiosity inspired in drivers by a person in the midst of busy motorized traffic. Surrounding traffic could also treat a pedicab as a bicyclist who might be wrongly assumed to belong on the edge of the road rather than in the middle of a lane of city traffic. Such situations create a danger to the pedicab operator, the passengers, and all of the persons and property that constitute the surrounding traffic, supporting the requirement for greater insurance.

It may be, as argued by Wasatch, that because a human and a pedicab are smaller and lighter than a taxicab or a horse, a pedicab is incapable of causing as much damage to other persons or property in a collision.[46] But the reverse is also true–the lighter and smaller pedicab, its human operator, and its passengers are more likely to receive a

---

[46]Pls.' Mem., at 5 n.3.

serious injury in a collision or other type of traffic accident.  For this reason, the fact, accepted as true for the purposes of this Motion, that pedicabs have a lower rate of incidents causing injury and/or property damage is still compatible with the City's proffered rational basis—that greater insurance is needed because the potential amount of damages in each pedicab incident may be greater.

The Court finds that such concerns provide a rational basis for the City's action in requiring the insurance coverage. Accordingly, the Equal Protection claim must be dismissed.

## VI. Free Speech

Defendants contend that the free speech claim must be dismissed because the amount of insurance required is a regulation on the pedicab business, not a regulation on any advertising displayed on the pedicab. Plaintiff disagrees arguing that this case is controlled by the ruling in *Pacific Frontier v. Pleasant Grove City*.[47]

The Court finds that *Pacific Frontier*, dealing with regulations affecting persons soliciting door to door is inapposite to the facts alleged herein. The Court finds that the facts as alleged do not state a plausible claim for the violation of Wasatch's right to free speech.

## VII.  QUALIFIED IMMUNITY - OFFICIAL CAPACITY

As the Court has determined that Wasatch fails to state a claim for a violation of a constitutional right under § 1983, the Court need not address Defendants' claims of

---

[47] 414 F.3d 1221 (10th Cir. 2005).

qualified immunity or their contention this case should be brought against the individual defendants only in their official capacity.

## VIII.  NEGLIGENCE

The Individual Defendants also seek a determination that they are immune from suit for the alleged negligence under the legislative process privilege and the Governmental Immunity Act of Utah.  Having dismissed the federal question claims and it being very early in the course of this case, the Court declines to exercise supplemental jurisdiction over the negligence claim.

## IX.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 21) is GRANTED WITH PREJUDICE as to Plaintiff's claims for violation of rights to due process, equal protection and free speech under § 1983.  It is further

ORDERED that Plaintiff's claim for negligence is DISMISSED WITHOUT PREJUDICE because pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the negligence claim.

DATED   May 27, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge